The People of the State of Illinois, Plaintiff-Appellee, v. Frank Witt, Defendant-Appellant.

Gen. No. 69–154.

Second District.

April 13, 1970.

Donovan, Dichtl, Atten, Mountcastle and Roberts, of Wheaton, for appellant.

William V. Hopf, State's Attorney of DuPage County, of Wheaton, and Frank J. Petru, Assistant State's Attorney, for appellee.

MR. JUSTICE THOMAS J. MORAN delivered the opinion of the court.

The defendant, Frank Witt, was charged with the offense of driving under the influence of intoxicating liquor (Ill Rev Stats 1967, c 95½, § 144). After a bench

trial, he was found guilty, fined $100 and assessed $25 in costs.

The sole issue on appeal is whether the evidence introduced supports a finding of guilty beyond a reasonable doubt.

The State introduced the testimony of two police officers. The arresting officer, Farina, testified that he first noticed the defendant driving northbound on Route 53, in the southbound lane of traffic; that he proceeded to follow and while doing so he observed that the defendant's vehicle was approximately three feet behind a vehicle in front of it and still weaving into the southbound lane; that the defendant then passed the other vehicle and attained a speed of 70 m. p. h. for a distance of two blocks; that the speed limit at this location was 45 m. p. h.; that he then turned on his vehicle's red lights and attempted to stop the defendant; that the defendant slowed his car to 45 m. p. h., but did not stop; that he pulled alongside of the defendant's vehicle and motioned the defendant to stop, but he did not; that in the meantime, he radioed for assistance and continued to follow; that when another squad car arrived, Farina pulled in front of the defendant's vehicle and the second squad car pulled behind the defendant's car; that he slowed his squad car down and was able to stop the defendant; that he approached the defendant and ordered him out of his car; that defendant alighted from his car and started to walk toward him, staggering from side to side, and was told to remain by his vehicle; that, at this time, while talking to the defendant, he noticed that defendant's eyes were dilated and observed a strong odor of alcohol on his breath; that he advised defendant of his rights and placed him under arrest; that he handcuffed the defendant, placed him in his squad car and drove to the police station with the second squad car following; that upon arriving at the station, the defendant was let out of the squad car and, as he walked toward

138

the station, he was staggering from side to side; that Farina and the other officer, Bonnell, had to assist by holding the defendant under each of his arms; that upon questioning, the defendant related that he had drank eight beers; that he had commenced drinking at about 7:30 p. m. (the arrest occurring at approximately 10:30 p. m.) ; that he had eaten breakfast that morning; and that, in the officer's opinion, the defendant was under the influence of intoxicating liquor. On cross-examination, the officer stated that no breathalizer test was administered and that the defendant denied being intoxicated.

Bonnell testified that after receiving a radio call for assistance, he came upon the Farina vehicle which was in pursuit of the defendant; that they were able to maneuver their vehicles so that the defendant's vehicle was between the squad cars, enabling them to stop the defendant's vehicle; that when defendant got out of his car, he was unsure of his balance; that he was fumbling when attempting to produce his driver's license; that, after being arrested and handcuffed, he walked to the squad car and, again, his balance was unsure and he was assisted into the vehicle; that, at the police station, defendant was staggering and became loud and boisterous; that he overheard the defendant, in reply to Farina's questions, state that he had eight beers; and that, in his opinion, the defendant was under the influence of intoxicating liquor. On cross-examination, the officer admitted that he was mistaken when he testified that the defendant removed his driver's license from his pants pocket because Farina procured the defendant's license from the glove compartment of his car.

Three witnesses were called by the defense. The first witness, Butler, testified that, in addition to his regular employment, he had been in the police reserve for ten years; that he was called to the police station by a friend to take the defendant to his car, which had been

left at the scene of the arrest; that he knew the defendant; that he arrived at the station about 12:15 a. m.; that he did not notice anything unusual in the defendant's speech or walk; that in his opinion the defendant was not intoxicated; that he received the keys to the defendant's car, turned them over to defendant who then drove his car home. On cross-examination, he testified that Farina gave the defendant's car keys to him and told him that he could "do as I saw fit" with them and he denied that the officer warned him not to let the defendant drive his car.

The next defense witness, Burger, testified that he had known the defendant for 11 years, that on the night in question, he received a telephone call from the defendant requesting that he drive the defendant or come to the station and assist him by way of bond "or someway"; that he called Butler; that he did not notice anything unusual in the defendant's speech over the phone. There was no cross-examination of this witness.

The third witness called by the defendant was one Hittner. He testified that he and the defendant played 18 holes of golf together that day, finishing about 7:00 or 7:30 p. m.; that he and the defendant had several beers after their game, then took a sauna bath and shower and had dinner; that the defendant did not have anything to drink during dinner and they parted company about 10:00 p. m. and that, at that time, defendant was not under the influence of alcohol.

The defendant testified that, prior to playing golf, he had not had any intoxicating beverages but after finishing his game, he did have two to three beers before dinner; that prior to taking a sauna bath, he took a couple of Coricidin tablets to ward off a cold and that during dinner and thereafter, he did not imbibe in any any alcoholic beverage. The defendant denied that he was intoxicated, exceeded the speed limit or traveled in

the wrong lane. He stated that when the squad, with its red lights flashing, pulled alongside of him, he immediately stopped; that he got out of his vehicle, was "frisked and handcuffed" and taken to the police station; and that he requested to make a phone call but was refused. On cross-examination, he admitted telling the officers that he had eight beers and that two squad cars participated in his arrest.

The State recalled Farina in rebuttal. He related that he turned the defendant's car keys over to Butler with instructions that defendant was not to drive his car and that they had already called the State police and reported to them that defendant's car would be parked along the roadside but would be picked up the following morning.

■ ■ The most that can be said of the evidence introduced at the trial on the issue off intoxication is that it was conflicting. It became the duty of the trier of facts to determine the credibility of the witnesses and the weight to be given to the testimony of each and, after doing so, to arrive at a judgment. We are of the opinion, after a reading of the entire record, that the trial court did so, and arrived at a correct conclusion.

■ Where the evidence is merely conflicting, a reviewing court will not substitute its judgment for that of the trier of facts. The People v. Clark, 30 Ill2d 216, 219, 195 NE2d 631 (1964); People v. Cooksey, 119 Ill App2d 85, 255 NE2d 22 (1970); People v. Miller, 101 Ill App2d 361, 364–365, 243 NE2d 277 (1968). See also People v. Haney, 95 Ill App2d 1, 8, 238 NE2d 110 (1968).

Judgment affirmed.

DAVIS, P. J. and SEIDENFELD, J., concur.